1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

VERADA REYNOLDS,         )    Case No. EDCV 19-00150-AS
                          )
         Plaintiff,    )    **MEMORANDUM OPINION AND**
                          )
     v.             )    **ORDER OF REMAND**
                          )
ANDREW M. SAUL, Commissioner )
of the Social Security     )
Administration,[1]          )
                          )
         Defendant.    )
_____)

     For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

     [1]    Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted for Acting Commissioner Nancy A. Berryhill in this case.  <u>See</u> Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On January 25, 2019, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 14-15 ). On June 24, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 18-19). On September 23, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 20).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 8, 2017, Plaintiff, formerly employed at attorneys' offices and an accounting office as a customer service administrator (see AR 55-61, 242, 250-53), filed an application for Disability Insurance Benefits alleging an inability to work because of a disabling condition since January 1, 2015. (See AR 196-99).

On July 12, 2018, the Administrative Law Judge ("ALJ"), Daniel Benjamin, heard testimony from Plaintiff (represented by counsel) and vocational expert June Hagen. (See AR 38-85). On July 27, 2018, the ALJ issued a decision denying Plaintiff's application. (See AR 18-29). Applying the five-step sequential process, the ALJ found at step one

that Plaintiff had not engaged in substantial gainful activity since January 1, 2015. (AR 20). At step two, the ALJ determined that Plaintiff had the following severe impairments -- "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine with radiculopathy; and a history of right hand injury, trigger finger with surgical release in 2015 and 2017." (AR 20-21).[2] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 23).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform a reduced range of light work[4] with the following limitations: can balance, climb ramps and stairs, stoop, kneel crouch and crawl occasionally; cannot climb ladders, ropes or scaffolds, or be exposed to unprotected heights or moving machinery parts; can reach with bilateral upper extremities frequently; can reach overhead with bilateral upper extremities occasionally; and can handle and finger with right dominant upper extremity frequently. (AR 23-28).

---

[2]    The ALJ determined that Plaintiff's other impairments -- obstructive sleep apnea, mitral and pulmonic valve disease, thyroid disease, hyperlipidemia, a history of leg surgery, a history of low blood pressure, depressive disorder, anxiety disorder, and posttraumatic stress disorder -- were nonsevere). (AR 21-23).

[3]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

3

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a secretary as generally performed (AR 28), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 29).

The Appeals Council denied Plaintiff's request for review on November 30, 2018. (<u>See</u> AR 1-5).  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence.  <u>See</u> <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).[5]

_____

[5]  The  harmless  error  rule  applies  to  the review of administrative decisions regarding disability.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676,
(continued...)

**PLAINTIFF'S CONTENTION**S


Plaintiff alleges that the ALJ erred in failing to properly: (1) reject the opinions of Plaintiff's treating physician and other medical providers, rely on the opinions of the State Agency Medical physician, and consider the impact of Plaintiff's impairments (mitral and pulmonary valve disease, thyroid disease, hyperlipidemia, history of leg surgery, history of low blood pressure, sleep apnea) on the RFC; (2) assess Plaintiff's subjective symptom testimony; (3) assess third party testimony; and (4) determine Plaintiff's ability to perform past relevant work or full-time work. (<u>See</u> Joint Stip. at 3-12, 18-25, 28-35).


**DISCUSSION**


After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error with respect to the ALJ's rejection of the opinion of Plaintiff's treating physician warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's other claims of error.

//

//

//

---

[5] (...continued)
679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

**A.    The ALJ Improperly Rejected the Opinion of Plaintiff's Treating Physician, Gary Pang, M.D.**

Plaintiff asserts that the ALJ failed to properly reject the opinions of Plaintiff's treating physician, Dr. Pang, and of Plaintiff's "other medical providers." (See Joint Stip. at 4-5, 7-10, 12, 19).[6] Defendant asserts that the ALJ properly assessed the opinion of Dr. Pang. (See Joint Stip. at 16-17).

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. § 404.1527(c)(2)-(6).

---

[6]    Since Plaintiff has failed to identify Plaintiff's other treating medical providers whose opinions the ALJ allegedly failed to properly reject, the Court will not address Plaintiff's claim as to "other medical providers."

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1164 (9th Cir 2008); <u>Lester</u>, 81 F.3d at 830. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester</u>, <u>supra</u>. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted). Finally, an ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2015); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

Gary Pang, M.D., at University Pain Consultants, treated Plaintiff from November 27, 2017 to June 4, 2018, which included physical examinations on six occasions (November 27, 2017, December 27, 2017, April 9, 2018, April 26, 2018, May 7, 2018, and June 4, 2018). (<u>See</u> AR 1051-94).

In a Physical Medical Source Statement dated July 2, 2018, Dr. Pang stated that  he had treated Plaintiff "monthly since 11/27/17." (AR 1097). Dr. Pang diagnosed Plaintiff with cervical spondylosis, myofacial pain, cervical degenerative disc disease, lumbar stenosis and radiculopathy of degenerative disc. (<u>Id</u>.). Dr. Pang stated that

Plaintiff's symptoms were "low back pain from pain associated with sciatic burning pain in the legs," neck pain, shoulder pain secondary to arthritis, and fatigue when standing, sitting, walking and holding arms up. (Id.).[7] Dr. Pang stated that Plaintiff's impairments lasted or can be expected to last at least twelve months, and that emotional factors, such as depression and anxiety, contribute to the severity of Plaintiff's symptoms and functional limitations. (Id.) Dr. Pang found that Plaintiff had the following functional work limitations: Plaintiff can walk one-half block without rest or severe pain; Plaintiff can sit at one time and stand at one time for 30 minutes; Plaintiff can sit and stand/walk less than 2 hours in an 8-hour workday; Plaintiff's job needs to permit shifting positions at will from sitting, standing or walking; Plaintiff's job must include walking every 30 minutes for 15 minutes; Plaintiff will need to take unscheduled breaks every 30 minutes for 15 minutes (due to muscle weakness and pain/parasthesias, numbness); with prolonged sitting, Plaintiff's leg(s) should be elevated at a high level (50 percent of the time for a sedentary job); Plaintiff must use a cane or other hand-held assistive device while engaged in occasional standing/walking (due to imbalance, pain and weakness); Plaintiff can rarely (1 percent to 5 percent of an 8-hour workday) lift and carry less

---

[7]    In the section asking for the identification of clinical findings and objective signs, Dr. Pang's writing is difficult to decipher.    It appears that Dr. Pang wrote, "Pain extension back moderate, positive straight leg raise [left] 70 [degrees] [and] right 70 [degrees] [and] tender over sciatic nerve in [illegible]. [Illegible] anterior of Spurlings right of [illegible] middle [illegible] of [illegible] right hand grip." (AR 1097).

       Plaintiff characterizes Dr. Pang's response as follows: "Dr. Pang described positive objective test results and clinical findings that included loss of grip strength in the right hand." (Joint Stip. at 8).

than 10 pounds, and can never lift 10 pounds or more; Plaintiff can never twist, stoop (bend), crouch/squat and climb ladders, and can rarely (1 percent to 5 percent of an 8-hour workday) climb stairs; Plaintiff's symptoms are likely to be severe enough 10 percent of the workday to interfere with attention and concentration needed to perform even simple work tasks; Plaintiff is capable of low stress work; Plaintiff's impairments are likely to produce "good days" and "bad days"; and Plaintiff's impairments or treatment likely will cause Plaintiff to be absent from work for an average of more than four days per month. (AR 1098-1100).

The ALJ gave "limited weight" to Dr. Pang's opinion. (AR 27) After briefly summarizing Dr. Pang's opinion (see id.), the ALJ wrote: "While Dr. Pang had a treating relationship with the claimant, this opinion is extremely inconsistent with the claimant's treatment history discussed above and her ability to engage in a wide range of physically demanding activities." (Id.).

Since Dr. Pang's opinion was contradicted by another physician's opinion, the ALJ was required to provide "clear and convincing" reasons for rejecting Dr. Pang's opinion. See Trevizo, supra.[8]

---

[8] The June 8, 2017 opinion of State Agency physician, P. Ombres, M.D. -- to which the ALJ gave "significant weight" (AR 27) -- contradicted Dr. Pang's opinion, in that Dr. Ombres opined that Plaintiff can stand and/or walk about 6 hours in an 8-hour workday, can lift and/or carry 10 pounds frequently and 20 pounds occasionally, and can stoop, crouch and climb ladders and stairs frequently. (See AR 93-95).

The August 17, 2017 opinion of State Agency physician, G. Taylor-Holmes, M.D. (an assessment expressly covering the period January
(continued...)

1

2

1, 2015 through May 18, 2017) -- to which the ALJ gave "significant
weight" (AR 27) -- also contradicted Dr. Pang's opinion in that Dr.
Taylor-Holmes opined that Plaintiff can stand and/or walk about 6 hours
in an 8-hour workday, can lift and/or carry 10 pounds frequently and 20
pounds occasionally, and can stoop, crouch and climb ladders and stairs
frequently.  (See AR 109-12).

3

4

5

6

       The ALJ also gave "significant weight" to the August 17, 2017
opinion of State Agency physician, G. Taylor-Holmes, M.D. for an
assessment expressly covering the period May 19, 2017 through May 18,
2018), finding it to be "the best description of the claimant's
limitations over the entire relevant period (and not just as of May
2017)" (AR 27).   This opinion contradicted Dr. Pang's opinion in the
same respects as Dr. Taylor-Holmes's opinion for an assessment covering
the period January 2015 to May 2017, except that Dr. Taylor-Holmes
opined that Plaintiff can climb ladders occasionally (not frequently).
(Sese AR 112-14).

7

8

9

10

11

12

       Since the majority of Dr. Pang's opinion was contradicted by Dr.
Ombres' and Dr. Taylor-Holmes' opinions (i.e., Plaintiff's ability to
sit at one time and stand at one time, and Plaintiff's need to shift
positions at will, walk, take unscheduled breaks, have leg elevation
with prolonged sitting, use a cane or other hand-held assistive device,
Plaintiff's ability to twist and crouch/squat, the interference ;
Plaintiff's symptoms' interference on attention and concentration; and
Plaintiff's likely absence from work), the "clear and convincing"
standard applies to the ALJ's rejection of Dr. Pang's opinion. As set
forth above, the Court finds that the ALJ did not meet this standard in
rejecting Dr. Pang's opinion.

13

14

15

16

17

18

       Even if the Court were to apply the "specific and legitimate"
standard based on contradictions between Dr. Pang's opinion and the
opinions of Dr. Ombres and Dr. Taylor-Holmes, (see Trevizo, 871 F.3d at
676 [employing the "specific and legitimate" standard based on
inferences from the record about contradictions between the opinions of
claimant's treating physician and a non-examining physician]), the Court
still would find that the ALJ did not properly reject Dr. Pang's
opinion.

19

20

21

22

       Nonetheless, the Court is inclined to find that the ALJ
properly relied on the opinions of Dr. Ombres and Dr. Taylor-Holmes
concerning Plaintiff's functional work capacity with respect to her hand
issues from the alleged disability onset date of January 1, 2015 through
June 8, 2017 (the date of Dr. Ombres' opinion) and/or August 17, 2017
(the date of Dr. Taylor-Holmes' opinions).   As the ALJ noted, the
evidence in the record reflected Plaintiff's recovery from her 2015
right hand surgery, Plaintiff's return to strenuous activities in 2016
and 2017 (i.e., skiing and shoveling snow), and Plaintiff's employment
30 hours a week in 2016.  (AR 27).  In addition, the Court is inclined
to find that the ALJ properly found that Plaintiff's testimony

23

24

25

26

27

28

                                                      (continued...)

The ALJ erred in rejecting Dr. Pang's opinion because the ALJ failed to consider the factors such as the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, and specialization of the physician (20 C.F.R. § 404.1527(c)(2)-(6)). <u>See Trevizo</u>, 871 F.3d at 676 ("Though [the ALJ] suggested that [the treating physician's opinion was 'inconsistent with the other substantial evidence in [the claimant's] case record,' such that it should not be given dispositive weight, . . . , the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, or the supportability of the opinion[.] . . . This failure alone constitutes reversible legal error.").

Moreover, the ALJ's determination that Dr. Pang's opinion was "extremely inconsistent with the claimant's treatment history" was conclusory because the ALJ failed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)(quoting <u>Cotton v. Bowen</u>, 799 F.2d 1403,

---

[8]   (...continued)
concerning the intensity, persistence and limiting effects of her symptoms related to her hand issues was not fully credible, for the period from her alleged disability onset date of January 1, 2015 through June 8, 2017 (the date of Dr. Ombres' opinion) and/or August 17, 2017 (the date of Dr. Taylor-Holmes' opinions), based on the objective medical evidence, Plaintiff's employment in 2015, 2016, and January 2017, and Plaintiff's ability to do strenuous activities in 2016 and January 2017 (i.e., skiing and employment shoveling snow). (AR 25).

1408 (9th Cir. 1986)), or point to anything in Dr. Pang's treatment
notes or in the clinical record that contradicted Dr. Pang's opinion.
See Trevizo, 871 F.3d at 677; Embrey v. Bowen, 849 F.2d 418, 421 (9th
Cir. 1988)("To say that medical opinions are not supported by sufficient
objective findings . . . does not achieve the level of specificity our
prior cases have required . . . .").

Indeed, the record reflects that, *during the period covered by Dr.
Pang's opinion*, Plaintiff suffered from neck and lower back impairments
and received extensive treatment for them.[9]

An April 10, 2017 EMG showed "right ulnar nerve entrapment at the
Guyon's tunnel", "right median nerve neuropath at undermined site", and
"suggestion of cervical radiculopathy, mainly affecting C8/T1." (AR
743-44). An April 25, 2017 MRI of the cervical spine showed
"degenerative disc disease with moderate central canal stenosis at C6-C7
and mild central canal stenosis at C5-C6," "left neuroforaminal
narrowing at C5-C6 and C6-C7," and "congenital spinal stenosis." (AR
830-31). June 12, 2017 X-rays of the lumbar spine showed "[n]o acute
abnormality" and "[m]ild loss of disc height at L3-L4." (AR 1128-29).
A June 15, 2017 CT scan of the lumbar spine showed "L3-L4 mild ventral
marginal osteophyte formation" and "[n]o evidence of disc herniation or
stenosis." (AR 1126). A June 27, 2017 MRI of the lumbar spine showed

---

[9]    It is not clear whether Dr. Pang's opinion about Plaintiff's
functional limitations, which was dated July 2, 2018 and stated that Dr.
Pang had treated Plaintiff "monthly since 11/27/17," covers the period
of time starting from the beginning of Plaintiff's neck and lower back
issues (April 10, 2017, see AR 743) or from November 27, 2017, when Dr.
Pang began treating Plaintiff. See AR 1081-84).

in the L3-L4 a minimal diffuse disc bulge, and in the L4-L5 a minimal diffuse disc bulge, mild bilateral neural foraminal narrowing, moderate spinal canal stenosis, bilateral facet joint arthrosis, and "effacement of the lateral recesses of the spinal canal with encroachment on the transiting nerve roots." (AR 828-29, 1124-25). A September 24, 2017 MRI of the lumbar spine (after Plaintiff was in a "fender bender" on September 17, 2017, see AR 859, 882, 917) showed: "Disc bulges resulting in neuroforaminal narrowing at L3-L4 and L4-L5. An annular tear is seen at L4-L5." (AR 879, 1122-23). A September 24, 2017 MRI of the cervical spine showed: "1. Degenerative disc disease with moderate central canal stenosis at C6-C7 and mild central canal stenosis at C5-C6. 2. Left neuroforaminal narrowing at C5 and C6-C7. 3. Congenital spinal stenosis. 4. There are no interval changes compared to MRI scan 4/25/17." (AR 878, 1120-21). On September 26, 2017, Plaintiff's neurosurgeon, to whom Plaintiff had been referred to for consultation in June 2017 (see AR 1116-17), found that the MRI of the lumbar spine was unremarkable, but that the MRI of the cervical spine showed issues (disc bulges at C5-6 and C6-7, moderate canal stenosis at C6-7, and mild spinal stenosis at C5-6) warranting an "anterior cervical discectomy and fusion at the C6-7 level." (AR 1114-15).

On November 27, 2017, Dr. Pang began to treat Plaintiff, based on Plaintiff's report of neck pain and low back pain radiating to the right buttock, thigh and leg (see AR 1082, 1085-89). Physical examination of the neck was normal. Physical examination of the musculoskeletal system showed, inter alia, mild pain in the lumbar spine with right and left rotations, moderate pain with flexion at the waist, paravertebral tenderness and moderate pain on the right with extension at the waist,

a negative straight-leg raise test bilaterally,[10] and "[p]araverterbral tenderness over lumbar facet joints right, and tenderness of the sciatic notch (right)." (AR 1081-84).

On December 27, 2017, Plaintiff complained of neck and low back pain. Physical examination of the neck and musculoskeletal system remained the same as on November 27, 2017. (AR 1077-80).

On January 11, 2018, Plaintiff underwent an anterior cervical discectomy at C6-C7 with a fusion. Postoperative x-rays did not show instability on flexion or extension. Plaintiff was given a rigid collar to wear. (AR 876-77). On January 23, 2018 (Plaintiff's first post-operative visit), Plaintiff told the neurosurgeon that "the profound numbness she was having in the right upper extremity is completely gone." (AR 1110).

However, on March 15, 2018, Plaintiff sought treatment with Sam Bakshian, M.D., an orthopaedic surgeon. Plaintiff complained of constant pain in the neck radiating into her bilateral shoulders, and stiffness, a burning sensation, and a popping sensation in her neck. Plaintiff also complained of constant pain in her low back radiating into her legs and feet, numbness and tingling in her legs and feet, and

---

[10] The "straight leg raise test" requires a medical practitioner to raise a patient's leg upward while the patient is lying down. The test stretches the nerve root. *The Merck Manual of Diagnosis and Therapy*, 1490 (17th Ed. 1999). "A positive Lasegue or straight leg raising test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4-L5 or L5-S1 spinal nerve roots." <u>Primero v. Astrue</u>, 2013 WL 394883, *2 at n.6 (C.D. Cal. Jan. 31, 2013)(citation omitted).

a burning sensation in her low back and mid back. Physical examination of the cervical spine revealed, <u>inter alia</u>, a reduced range of motion on forward flexion, extension, and right and left lateral bending, normal gait, slightly reduced motor strength in the right and left deltoids and biceps, and normal sensation in the bilateral upper extremity. Physical examination of the lumbar spine revealed, <u>inter alia</u>, a reduced range of motion on forward flexion, normal motor strength, and normal sensation in the bilateral lower extremity. Dr. Bakshian diagnosed Plaintiff with "[l]umbar spine sprain/strain with radiculopathy, right-sided with MRI evidence of disc herniation at L4-L5 and neural foraminal narrowing" and stated he believed Plaintiff could benefit from an epidural steroid injection at L4-L5. (AR 882-88).

On April 3, 2018, Plaintiff saw the neurosurgeon who had performed the surgery. Plaintiff complained of neck and back pain. The neurosurgeon stated that Plaintiff needed to wean off narcotics for her postoperative neck pain, and that Plaintiff could return to Dr. Pang for treatment. The neurosurgeon stated that X-rays of the cervical spine showed good alignment and normal alignment in flexion and extension, and that Plaintiff could start to wean off the neck collar (weaning could be completed in 2 to 4 weeks). (AR 1108).

On April 9, 2018, Plaintiff saw Dr. Pang and complained of neck and lower back pain and tight muscles in the neck and down the back. Plaintiff stated that the numbness in her arm had resolved and her surgeon had cleared her to start physical therapy. Physical examination of the neck revealed that rotation was limited bilaterally; there was moderate pain; and on flexion there was moderate pain, muscle rigidity,

15

and a collar. Physical examination of the musculoskeletal system remained the same as on December 27, 2017, except for paravertebral tenderness and moderate pain bilaterally with extension at the waist, no information about a straight leg test, and no tenderness over the lumbar facet joints. (AR 1071-75).

During her April 26, 2018 appointment with Dr. Pang, Plaintiff complained of lower back pain that radiated to the right buttock and thigh. Physical examination of the neck revealed, <u>inter alia</u>, that rotation was limited bilaterally; extension was normal but there was muscle rigidity, Spurling's test[11] was negative bilaterally, Lhermitte's sign[12] was positive, and Axial compression[13] was positive; and on flexion there was moderate pain. Physical examination of the musculoskeletal

[11] "Physicians conduct a Spurling's test to assess nerve root compression and cervical radiculopathy by turning the patient's head and applying downward pressure. A positive Spurling's sign indicates that the neck pain radiates to the area of the body connected to the affected nerve." <u>Shaw v. AT&T Umbrella Ben. Plan No. 1</u>, 795 F.3d 538, 542 n.1 (6th Cir. 2015); <u>see also</u> <u>Braunstein v. Berryhill</u>, 2017 WL 923901, *5 (C.D. Cal. Mar. 8, 2017) ("This test is used to assess pain caused by nerve root compression, also called radiculopathy.").

[12] "Lhermitte's sign is a brief, stabbing, electric-shock-like sensation that run from the back of the head down the spine, brought on by bending the neck forward." <u>McNally v. Life Ins. Co. of North America</u>, 2009 WL 1458275, *7 (D. Minn. May 26, 2009)(citation omitted); <u>see also</u> <u>Kowaluk v. Commisioner of Social Security</u>, 2009 WL 775470, *3 n. 3 (W.D. Penn. Mar. 18, 2009)("Lhermitte's sign is the development of sudden, transient, electric-like shocks spreading down the body when the patient flexes the head forward; seen mainly in multiple sclerosis but also in compression and other disorders of the cervical cord.")(citation omitted); <u>Gustafson v. Colvin</u>, 2014 WL 1686847, *4 (D. Az. Apr. 29, 2014)(Lhermitte's sign checks for nerve pain from neck movement).

[13] "An axial-compression test checks for shoulder or spinal pain when pressure is placed on the patient's head[.]" <u>Claude Jerry Flood v. Berryhill</u>, 2018 WL 4677446, *5 n. 13 (C.D. Cal. Sept. 27, 2018).

system remained the same as on April 9, 2018. Plaintiff was given an epidural steroid injection at the L4-L5 midline. (AR 1063-67).[14]

On May 7, 2018, Plaintiff complained to Dr. Pang of neck pain, arm pain, and finger numbness and stated that she had received no pain reduction from the epidural steroid injection. Plaintiff reported pain relief with her current medications at 60 percent for 4 hours. Physical examination of the neck revealed, inter alia, normal rotation; normal extension but with muscle rigidity, a positive Spurling's test on the right and a negative Lhermitte's sign; and mild pain on flexion. Physical examination of the musculoskeletal system remained the same as on April 26, 2018. (AR 1057-61).[15]

On June 4, 2018, Plaintiff reported pain relief with current medications at 60 to 70 percent for 6 hours. Physical examination of the neck remained the same as on May 7, 2018. Physical examination of the musculoskeletal system revealed, inter alia, mild pain in the lumbar spine with right and left rotations, positive straight leg raise on the right and left legs (70 degrees), moderate pain with flexion at the waist, and paravertebral tenderness and moderate pain bilaterally with extension at the waist. Dr. Pang recommended that Plaintiff receive surgery for decompression to address the lumbar radiculopathy with L4-L5 stenosis identified in the June 2017 MRI. (AR 1051-55).

---

[14] The Court notes that the ALJ did not discuss Plaintiff's April 26, 2018 visit with Dr. Pang.

[15] The Court notes that the ALJ did not discuss Plaintiff's May 7, 2018 visit with Dr. Pang.

As Plaintiff noted (see Joint Stip. at 9), the opinions of Dr. Ombres and Dr. Taylor-Holmes were *not* based on a review of most of the above evidence concerning Plaintiff's neck and back issues, starting with the June 12, 2017 X-rays of the lumbar spine. (See AR 95, 109-12, 112-14). Accordingly, the record does not support the ALJ's determination that Dr. Pang's opinion was "extremely inconsistent with the claimant's treatment history" as to Plaintiff's neck and lower back issues.

The ALJ's second reason for rejecting Dr. Pang's opinion -- that Dr. Pang's opinion was "extremely inconsistent" with Plaintiff's "ability to engage in a wide range of physically demanding activities" (AR 28) -- was not "clear and convincing" or "specific and legitimate."

The ALJ did not specify what physically demanding activities Plaintiff engaged in *during the time that she was seeing Dr. Pang* that were inconsistent with Dr. Pang's opinion.

To the extent that the ALJ may have been referring to Plaintiff's work at a legal service company, Union 76 and Snow Valley in 2015 and 2016 and at a grocery store in 2016 through January 2017 (see AR 24-25, citing Plaintiff's hearing testimony [see AR 40-54]),[16] see also Joint

---

[16] Although, as the ALJ noted (see AR 20), Plaintiff testified at the hearing that she stopped working at the grocery store when she had her neck surgery in January 2018 (AR 42, 52), it does not appear that the ALJ credited that testimony. (See AR 24 [stating that Plaintiff testified she last worked at the grocery store in January 2017]).

Stip. at 16-17, 27),[17] Plaintiff's employment at those places mostly occurred *prior* to the period covered by about Dr. Pang's opinion. Moreover, as the ALJ noted (see AR 24), Plaintiff testified that she endured significant pain from the physical aspects of those jobs and that she only worked due to financial hardship. (See AR 46-55).

To the extent that the ALJ may have been referring to Plaintiff's activities of daily living such as grocery shopping, caring for an older dog, preparing simple meals, dusting, doing laundry, washing dishes, driving a car, calling family, and spending time with friends (see AR 25, citing Plaintiff's hearing testimony [see AR 70, 73-76] and AR 330-32 [Plaintiff's Function Report dated August 4, 2017], see also Joint Stip. at 16-17, 27-28), the ALJ failed to state whether, or in what manner those activities were physically demanding, or inconsistent with Dr. Pang's opinion regarding Plaintiff's functional limitations.

Finally, to the extent that the ALJ may have been referring to Plaintiff skiing twice in 2016 and shoveling snow in January 2017 (see AR 25-26, citing AR 624 [Mountain Community Hospital Patient Chart Report dated February 15, 2016] and AR 1116 [Sharyn Brekhus, M.D., Neurosurgery Consultation Note dated June 9, 2017]); see also Joint

---

[17] Although Defendant attempts to justify the ALJ's decision based on the Plaintiff's statement to the neurosurgeon on June 9, 2017, that she was still "working parttime at a gas station which requires 8 hours of standing on her feet without any breaks." (see Joint Stip. at 16, citing AR 1116) , the Court will not consider a reason for rejecting Dr. Pang's opinion that was not given by the ALJ in the decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Stip. at 16-17), those incidents occurred *prior* to the period covered by Dr. Pang's opinion.

Therefore, the ALJ failed to provide "clear and convincing" or "specific and legitimate" reasons for rejecting Dr. Pang's opinion about Plaintiff's functional work limitations.

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.   McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly reject Plaintiff's treating physician's opinion, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful

purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[18]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 6, 2019

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[18]   The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's improper reliance on the opinions of the State Agency Medical physician and the ALJ's failure to properly consider the impact of Plaintiff's impairments (mitral and pulmonic valve disease, thyroid disease, hyperlipidemia, history of leg surgery, history of low blood pressure, sleep apnea) on the RFC (<u>see</u> Joint Stip. at 3-7, 9-12, 18-20), the ALJ's failure to properly assess Plaintiff's subjective symptom testimony (<u>see</u> Joint Stip. at 20-25, 28-29), the ALJ's failure to properly assess third party testimony (<u>see</u> Joint Stip. at 29-31), and the ALJ's failure to properly determine Plaintiff's ability to perform past relevant work or full-time work (<u>see</u> Joint Stip. at 31-35).  Because this matter is being remanded for further consideration, these issues should also be considered on remand.